ROBERT WISNIEWSKI P.C.
40 Wall Street, Suite 2833
New York, New York 10005
Tel.: (212) 267-2101
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ALEXANDRA ROSARIO, ELIZABETH ORTIZ,  :
and AMADOU CAMARA,

                                      :

                    Plaintiffs,        **Docket No:**

                                      :

      -against-

                                        :        **JURY TRIAL DEMANDED**

2022 EASTCHESTER LLC, FRANK COTTO,
and NOBORU TAKASHIMA,               :

                    Defendants.  :

------------------------------------------------------------X

## COMPLAINT

Plaintiffs Alexandra Rosario ("Rosario"), Elizabeth Ortiz ("Ortiz") and Amadou Camara

("Camara") (collectively, "Plaintiffs") by their attorneys, Robert Wisniewski P.C., as and for their

Complaint against Defendants 2022 Eastchester LLC ("Corporate Defendant"), Frank Cotto ("Cotto"),

and Noboru Takashima ("Takashima") (collectively "Individual Defendants") (Corporate Defendant and

Individual Defendants are collectively referred to as the "Defendants"), state as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action to recover unpaid wages, overtime wages, liquidated damages,

interest and reasonable attorneys' fees and costs under the common law of New York, the Fair Labor

Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the various wage orders promulgated

by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.* (the "FLSA"), and Articles 6

and 19 of the New York Labor Law and the various wage orders promulgated thereunder by the New

York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL").

2.      Defendants own and operate Vaya, a small take-out and delivery restaurant serving modern Mexican food in the Morris Park neighborhood of the Bronx (the "Restaurant").

3.      Plaintiffs are former cashiers and delivery drivers who worked for Defendants' Restaurant.

4.      Defendants repeatedly and willfully violated state and federal labor laws by: (1) failing to provide Plaintiffs with wage notices and wage statements as required by NYLL § 195; (2) failing to compensate Plaintiffs for all the hours they worked and the hours they worked in excess of forty (40) per week in violation of the FLSA and NYLL; (3) making unlawful deductions from Plaintiffs' wages in violation of NYLL § 193 and the FLSA, and thereby failing to pay Plaintiffs the legally mandated minimum wage for all hours worked; and (4) failing to timely pay wages to Plaintiffs as required by NYLL § 191.

5.      Plaintiffs complained to Defendants about not being properly compensated for their work leading to Plaintiff Rosario's and Ortiz's separation of employment for Defendants and Plaintiff Camara's retaliatory termination by Defendants.

## PARTIES, JURISDICTION, AND VENUE

6.      At all relevant times herein, Plaintiff Rosario, a former employee of the Defendants, was and is a resident of the State of New York, Bronx County.

7.      At all relevant times herein, Plaintiff Ortiz, a former employee of the Defendants, was and is a resident of the State of New York, Bronx County.

8.      At all relevant times herein, Plaintiff Camara, a former employee of the Defendants, was and is a resident of the State of New York, Bronx County.

9.      Corporate Defendant is a New York limited liability company with a principal place of

business located at 2022 Eastchester Road, Bronx, NY 10461. At all relevant times, Corporate

Defendant was an "employer" within the meaning of all applicable statutes.

10.     Defendant Cotto, upon information and belief, resides in the State of New York.

11.     Defendant Noboru, upon information and belief, resides in the State of New York.

12.     At all relevant times herein, Defendants operated a take-out and delivery restaurant

named "Vaya" (the "Restaurant"), located at 2022 Eastchester Road, Bronx, NY 10461.

13.     At all relevant times herein, Defendants were the owners, members, majority

shareholders, officers, directors, operator, and/or managers of the Restaurant.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331,

in that this action arises under the FLSA. This Court has jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1367 in that they are so related to claims in the action within the court's original

jurisdiction that they form part of the same case or controversy.

15.     Defendants engage in an enterprise whose annual volume of sales or business done is not

less than $500,000, the activities of which affect interstate commerce in that the employees of

Defendants employ, handle, and sell goods that have been moved in or produced for interstate

commerce (including raw ingredients, prepared food items, kitchen tools and appliances, cleaning

supplies, and other items), and Defendants are thus employers subject to the jurisdiction of the FLSA.

16.     This Court has personal jurisdiction over each of the Defendants in that they are citizens

and residents of New York.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b), because substantial events giving rise to

Plaintiffs' claims occurred in this district, and one or more Defendants reside there.

## **JURY DEMAND**

18.     Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

19.        Defendants own and operate Vaya, a take-out and delivery restaurant serving modern Mexican food located at 2022 Eastchester Road, Bronx, NY 10461(the "Restaurant").

20.        The Restaurant caters to businesses and individuals in the Morris Park neighborhood of the Bronx and is open to the public from 11:00 a.m. to 9:00 or 10:00 p.m. Monday through Friday, and most Saturdays.

21.        At all relevant times, Defendants Cotto and Noboru served as the Restaurants' co-owners and Plaintiffs' managers.

22.        Defendants employed Plaintiffs Rosario and Ortiz as cashiers and Plaintiff Camara as a delivery driver at their Bronx Restaurant.

### Facts Relating to Plaintiffs' Employment with Defendants

23.        In or about August 18, 2019, Plaintiff Rosario entered into an oral agreement with Defendants whereby she agreed to work for Defendants as a full-time cashier at their Restaurant in exchange for the minimum wage and customer tips.

24.        In or about early December 2019, Plaintiff Ortiz entered into an oral agreement with Defendants whereby she agreed to work for Defendants as a full-time cashier at their Restaurant in exchange for the minimum wage and customer tips.

25.        At all revenant times, Rosario and Ortiz received no more than $15.00 in customer tips in any given work shift.

26.        As part of their duties as cashiers, Plaintiffs processed all take-out and delivery orders, collected payments from the Restaurant's customers using a cash register and Defendants' POS system, answered telephone calls, and maintained premises of the Restaurant.

27.        At all relevant times, Rosario worked as Defendants' morning cashier as follows:

4

a.  From August 18, 2019 to early October 2019, Rosario worked five (5) days a week Monday through Friday, from 11:00 am to 4:00 p.m. except on Thursdays, when she worked from 11:00 am to 9:00 p.m. or 10 p.m. for a total of approximately thirty (30) or thirty-one (31) hours per week;

b.  From early October 2019 through November 2019, Rosario worked from 11:00 a.m. to 9:00 p.m. or 10 p.m. Monday through Friday for a total of fifty (50) hours per week; and

c.  From early December 2019 until separation from her employment for Defendants on March 17, 2020, Rosario again worked (5) days a week Monday through Friday, from 11:00 am to 4:00 p.m. except on Thursdays, when she worked from 11:00 am to 9:00 p.m. or 10 p.m. for a total of approximately thirty (30) or thirty-one (31) hours per week.

28.     Throughout her employment at Defendants' Restaurant, Ortiz worked five (5) or six (6) days a week, Monday through Friday or Saturday, from approximately 4:00 p.m. to approximately 9:00 or 10:00 p.m., except for Thursdays when Ortiz worked from 2:00 p.m. to 12 a.m. at Defendants' "pop-up store" at a local Residence Inn by Marriott hotel for a total of thirty (30) to thirty-five (35) hours per week.

29.     In or about August 2017, Plaintiff Camara entered into an oral agreement with Defendants whereby he agreed to work for Defendants as a full-time deliveryman for the Restaurant in exchange for an hourly rate of $7.00 per hour and customer tips.

30.     In or about early 2019, after Camara threatened to leave his employment, Defendants raised Camara's wage rate to $10.00 per hour and customer tips.

31.     At all relevant times, Camara received $20.00 to $50.00 is customer tips in any given

5

work shift.

32.      As part of his duties as Defendants' delivery driver, Camara picked up orders from the Restaurant and delivered them to Defendants' customers using his own vehicle.

33.      Camara's employment with Defendants can be summarized as follows:

    a.  From August 2017 to the beginning of December 2017, Camara worked six (6) days a week, from 4 p.m. to 9 p.m. for a total of thirty (30) hours per week; and

    b.  From December 2017 until his retaliatory termination on March 12, 2020, Camara worked six (6) days a week, from 11 a.m. to 9 p.m. or, periodically, 10 p.m. for a total of sixty (60) or sixty-six (66) hours per week;

34.      On March 12, Defendants declared to Camara that they did not have work for him after Camara asked that Defendants pay him his rightfully earned wages. One day later, on March 13, 2020 Defendants Ortiz left her employment with Defendants after Defendants refused to pay her wages. Finally, four (4) days later, on March 17, 2020, Rosario left her employment with Defendants after Defendants refused to pay her wages.

### Facts Relating to Defendants' Violations of the Wage Laws

35.      Both the FLSA and the NYLL require employers to pay their employees at least the respective federal or state minimum wage for every hour worked. If the state minimum wage exceeds the federal minimum wage, the FLSA requires that employees be paid at the state rate.

36.      Plaintiffs were non-exempt employees subject to the higher minimum wage promulgated under the applicable Hospitality Industry Wage Order codified in 12 N.Y.C.R.R. 146 (the "Wage Order").

### i.   NYLL §§ 195.1 and 195.3.

37.      At all relevant times, Defendants compensated all Plaintiffs weekly by cash and

6

maintained a business practice pursuant to which each Plaintiff signed their name in a journal upon receipt of his or her wages for a weekly pay period.

38.     However, Defendants never provided Plaintiffs wage notices or wage statements as required under NYLL §§ 195.1 and 195.3 and the relevant Wage Order.

39.     NYLL §195.1 and the Wage Order mandate that every employer must present a wage notice specifying, among others, regular pay rate and overtime rate, to an employee and when the wage rate changes. Further, NYLL §195.3 and the Wage Order call for the employer to furnish to each employee a statement with every payment of wages, accurately listing hours worked, rates paid, and other information set forth in the statute and the wage order.

40.     Over the course of Plaintiffs' employment, Defendants never presented Plaintiffs with a wage notice in accordance with NYLL §195.1, whether at the beginning of their employment, or whenever the wage rate was changed.

41.     Further, Defendants did not furnish Plaintiffs with paystubs or any other writing containing information required by NYLL §195.3 and Wage Order §146-2.2 with their wage payments.

42.     Finally, Defendants failed to post in a conspicuous place on the Restaurant's premises the notices issued by the Department of Labor about wage and hour laws, tip appropriations, illegal deduction provisions and any other labor laws that the Commissioner shall deem appropriate as required by Section 146-2.4 of the Wage Order.

*ii.*     ***Minimum Wage***

43.     Both the FLSA and the NYLL require employers to pay their employees at least the respective federal or state minimum wage for every hour worked. If the state minimum wage exceeds the federal minimum wage, the FLSA requires that employees be paid at the state rate.

44.     Plaintiffs were non-exempt employees subject to the higher minimum wage promulgated

under the relevant Wage Order as codified in 12 N.Y.C.R.R. § 146.

45.     Pursuant to the Wage Order, the minimum wage for employees of small employers in New York City with ten (10) or fewer employees such as Defendants was as follows:

    a.  $10.50 per hour as of December 31, 2016;

    b.  $12.00 per hour as of December 31, 2017;

    c.  $13.50 per hour as of December 31, 2018; and

    d.  $15.00 per hour as of December 31, 2019.

46.     Except for Plaintiff Rosario who at all relevant times was compensated at the proper minimum wage of $13.50 and then $15.00 per hour, Defendants improperly compensated Plaintiffs Ortiz and Camara pursuant to a reduced "tip-credit wage"

47.     To save money, Defendants offset Plaintiffs Ortiz's and Camara's hourly wages by the amount of tips Plaintiff's received from Defendants'' customers without notice to Plaintiffs.

48.     Defendants were not entitled to apply tip credit allowances to offset and reduce Plaintiff Ortiz's basic hourly wage because: (1) Defendants did not notify Ortiz that they would claim tip allowances against their wages; and (2) because Ortiz spent twenty percent of any work shift performing non-tipped work and/or the gratuities Ortiz received from Defendants' customers, when combined with the cash wage paid to her by Defendants, were below the legally mandated minimum wage.

49.     Likewise, Defendants were not entitled to apply tip credit allowances to offset and reduce Plaintiff Camara's basic hourly wage because Defendants did not notify Camara that they would claim tip allowances against his wages.

50.     Accordingly, Defendants violated the minimum wage provisions of the Wage Order as they relate to Ortiz follows:

    a.  From approximately the second week of Ortiz's employment to December 31, 2019,

Defendants paid Ortiz a reduced tip credit wage of only $9.00 per hour when the Wage

Order called for the minimum wage to be $13.50 as of January 1, 2019; and

    b. From January 1, 2020 until Ortiz's separation from employment for Defendants on

March 13, 2020, Defendants paid Ortiz a reduced tip credit wage of only $9.00 per hour

when the Wage Order called for the minimum wage to be $15.00 as of January 1, 2020.

51.      As for Camara, Defendants violated the minimum wage provisions of the Wage Order in

the following manner:

    a. From the inception of Camara's employment in August 2017 to early January 2019,

Defendants paid Camara only $7.00 per hour when the Wage Order called for the

minimum wage of $10.50 as of January 1, 2017;

    b. From January 1, 2018 to December 31, 2018, Defendants still paid Camara only $7.00

per hour when the Wage Order called for the minimum wage of $12.00 as of January 1,

2018;

    c. From approximately January 2019 to December 31, 2019, Defendants paid Camara only

$10.00 per hour when the Wage Order called for the minimum wage of $13.50 as of

January 1, 2019; and

    d. From January 1, 2020 until Camara's retaliatory termination on March 12, 2020,

Defendants paid him only $10.00 per hour when the Wage Order called for the minimum

wage of $15.00 as of January 1, 2018.

52.      Additionally, Defendants did not compensate Rosario and Ortiz at all for the first four (4)

days of their employment, at which time Defendant Cotto "trained" them to work as cashiers.

53.      Lastly, Defendants violated the minimum wage provisions of the FLSA and NYLL when

they stopped compensating Plaintiffs for their work entirely. As of today's date, Defendants owe each

Plaintiff at least one week's worth of unpaid wages.

### iii. Overtime

54.     Both the FLSA and the NYLL provide that employers must compensate their employees for hours worked in excess of forty (40) hours per week at the premium overtime rate of time-and-one-half the corresponding regular rate. Defendants failed to pay Plaintiffs at the premium overtime rate.

55.     Throughout their employment, Rosario periodically worked more than forty (40) hours per week but Defendants only paid her for the hours worked in excess of forty (40) per week at her regular minimum wage rate of $13.50 or $15.00.

56.     Likewise, Camara worked at least sixty (60) hours per week from December 2017 until his termination on March 12, 2020, but Defendants only paid him for the hours worked in excess of forty (40) per week at the below minimum-wage rate of $7.00 and then $10.00 per hour.

### iv. Spread of Hours

57.     Section 146-1.6(a) of 12 NYCRR states that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday. The spread of hours includes "working time plus time off or meals plus intervals off duty."

58.     Plaintiffs were entitled to the payment of an extra one hour's pay at the basic minimum wage rate in addition to their regular hourly wages because all three Plaintiffs regularly worked longer than ten (10) hours a day: Rosario and Ortiz each worked more than ten (10) hours a day every Thursday, with Rosario having worked more than ten (10) hours a day five times a week during the two-month period from October 2019 through end of November 2019 that Defendants were looking to hire a second cashier. Camara worked more than ten (10) hours a day every day of the week, six (6) days a week from approximately December 2017 until his retaliatory termination.

59.      Yet, Defendants never compensated Plaintiffs the extra hour's pay at the minimum rate

for any day that Plaintiffs worked longer than ten (10) hours a day to which Plaintiffs were entitled.

*v.*      ***Unlawful Deductions from Plaintiffs Rosario's and Ortiz's pay***

60.      Under NYLL § 193(1), an employer may not deduct amounts from an employee's wages

unless those deductions are either "made in accordance with the provisions of any law or any rule or

regulation issued by any governmental agency," or "expressly authorized in writing by the employee

and are for the benefit of the employee."

61.      In violation of NYLL § 193, Defendants demanded that Rosario and Ortiz pay to

Defendants any amounts that the register operated by them was "short" at the end of each shift worked

by Rosario or Ortiz.

62.      Rosario and Ortiz estimate that, on average, Defendants unlawfully deducted at least

$20.00 of wages per week from each of them.

63.      Defendants' demands for payment were done with knowledge of their impropriety and

were intentional and willful.

*vi.*      ***Unlawful Deductions from Plaintiff Camara***

64.      To perform his job duties as a delivery driver, Camara purchased gasoline, vehicle parts

and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile

depreciation, routinely used his own funds to pay for parking meters, and incurred cell phone and data

charges all for the primary benefit of Defendants.

65.      Camara regularly made three (3) deliveries per hour for Defendants and Defendants

required Camara to be ready to accept new deliveries at all times and remain near the Restaurant at all

times. Because all parking spaces in the vicinity of the Restaurant were metered and Defendants

required Camara to use his own funds to pay for parking meters, to avoid paying for the meter or

11

receiving a parking ticket, Camara was forced to stay in his vehicle while awaiting new delivery orders.

66.     Camara estimates that he expended $2.50 on parking meters per day despite his efforts to mitigate parking meter charges.

67.     Camara further estimates that he regularly expended $100.00 per week on gasoline during the warm months from March to November, and on account of having to keep the engine of his vehicle running to keep warm, $150.00 per week during the cold months from December through February.

68.     Camara also purchased vehicle parts and fluids, paid for automobile repair and maintenance services, automobile insurance, and suffered automobile depreciation all for the benefit of the Defendants. In fact, when Camara's vehicle broke on two (2) occasions while Camara was working, Defendants sent Camara home without pay and told him to return after he fixed his vehicle.

69.     Lastly, Camara incurred cell phone and data charges because he was required to communicate with Defendants using his own cell phone equipment and wireless service.

70.     Defendants did not in any way track the expenses incurred by Camara for their benefit and did not reimburse Camara in any manner for such expenses.

71.     As a result of Defendants' failure to reimburse Camara for the job-related expenses, Defendants have not only violated the unlawful deduction provision of NYLL § 193(1) but failed to pay Camara minimum wage as required by law.

*Facts Relating to Violation of NYLL § 191(1)(a) and Plaintiff Camara's Retaliatory Termination by Defendants*

72.     As a culmination of Defendants' wage and hour violations outlined above, in or about January 2020, Defendants began to pay wages to Plaintiffs impermissibly late, and eventually, stopped paying them altogether but required Plaintiffs to continue to come to work.

73.      NYLL § 191(1)(a) provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned ..."

74.      Plaintiffs were "manual workers" within the meaning of this term under NYLL because they spent more than 25% of their work time on physical labor.

75.      In the months leading up to Plaintiffs' respective terminations by Defendants, Plaintiffs received their wages more than seven (7) calendar days after the end of the week in which they earned them in violation of Section 191(1)(a).

76.      On numerous occasions, Plaintiffs each complained to Defendant Cotto about not being paid on time or not being paid at all. Plaintiffs' complaints fell on deaf ears as Cotto always told Plaintiffs that he would only pay them when he had the money.

77.      When Camara asked Cotto to pay him his rightfully earned wages the last time, Cotto called Camara and told him that he did not have any more work for Camara.

78.      As of today's date, Defendants owe at least one week of wages to each of the Plaintiffs.

***Defendants' Failure to Pay Proper Wages was Willful***

79.      Defendants as employers have certain statutory obligations towards their employees, including paying employees for all of the hours they worked, paying the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of forty (40) per week, and making, keeping, and preserving proper payroll records.

80.      Defendants were aware of their requirement to pay Plaintiffs for each hour worked, and to pay the overtime premium of one-and-a-half times their regular rate for each our worked in excess of 40 per week.

81.      Nevertheless, Defendants failed to pay Plaintiffs their proper wages, including overtime wages.

13

82.	Defendants further willfully disregarded and purposefully evaded the recordkeeping requirements of the FLSA and NYLL by failing to maintain proper payroll records and paying workers in cash.

83.	As such, the various violations of the law which are alleged herein were committed intentionally and willfully by Defendants.

84.	At minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

***Facts Relating to Defendants as Joint Employers***

85.	At all relevant times herein, Corporate Defendant was and is controlled by the Individual Defendants.

86.	At all relevant times herein, the Individual Defendants conducted business as the Corporate Defendant.

87.	At all relevant times herein, each Individual Defendant acted for and on behalf of the Corporate Defendant, with the power and authority vested in him as the owner, officer, agent, and employee of the Corporate Defendant, and acted in the course and scope of their duty and function as owner, agent, employee, and officer of the Corporate Defendant.

88.	At all relevant times herein, the Individual Defendants directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks to Plaintiff.

89.	The Individual Defendants had control over the conditions of employment of the Plaintiffs, including their hiring and firing, his work schedule, the rate and method of payment of their wages, and the maintenance of his employment records.

90.	Individual Defendants also have also held themselves out to Plaintiffs as Corporate

14

Defendant's owners.

91.     At all relevant times herein, the Individual Defendants had operational control over the Corporate Defendant.

92.     As a matter of economic reality, all Defendants are joint employers of Plaintiff; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

**Facts Relating to Piercing the Corporate Veil**

93.     Upon information and belief, Individual Defendants are owners of Corporate Defendant.

94.     Upon information and belief, in conducting the affairs of the Corporate Defendant, Individual Defendants failed to comply with the required corporate formalities, including recordkeeping, governance requirements, and other formalities.

95.     Upon information and belief, the Individual Defendants used the assets of the Corporate Defendant as their own and/or otherwise commingled personal assets with the assets of the Corporate Defendant.

96.     As alleged herein, the Individual Defendants used the Corporate Defendant in order to circumvent a statute or statutes, or to accomplish other wrongful acts or in furtherance of other wrongful or inequitable purposes.

97.     Corporate Defendant is an alter-ego of the Individual Defendants; and, as will be established at trial, for the purpose of the claims made by Plaintiff herein, Corporate Defendant has no separate legal existence from the Individual Defendants. As such, the Corporate Defendant and the Individual Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract Against the Corporate Defendant)

98.     Plaintiffs repeat and reallege each and every previous allegation as if fully set forth.

99.     Plaintiffs agreed to perform work and services for the Defendants.

100.    Plaintiffs satisfactorily supplied labor in connection with, and in furtherance of, the work required under their respective employment contracts with the Defendants, and in doing so, complied with the terms of their respective employment agreements with the Defendants and were therefore entitled to wages they rightfully earned while working for the Defendants.

101.    Corporate Defendant failed or refused to pay the Plaintiffs the wages to which they were entitled under their respective employment agreements with the Defendants.

102.    Corporate Defendant's failure or refusal to pay the Plaintiffs wages to which they were entitled under their employment agreements with the Defendants constituted a breach of Plaintiffs' respective employment agreements with the Defendants.

103.    That by virtue of the foregoing breaches of contract by the Defendants, Plaintiffs have been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiffs should have been paid as contemplated by their employment agreements with the Corporate Defendant, less amounts actually paid to the Plaintiffs, with an award of interest, costs, disbursements, and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (FLSA Unpaid Wages and Overtime Against All Defendants)

104.    Plaintiffs repeat and reallege each and every previous allegation as if fully set forth.

105.    Plaintiffs are persons covered by, and/or intended to benefit from, the provisions of the FLSA in respect to their work for Defendants.

106.    Pursuant to the FLSA, Plaintiffs were entitled to certain minimum wages and overtime

wages, which Defendants intentionally and willfully failed to pay in violation of such laws.

107.     Plaintiffs regularly worked in excess of forty (40) hours per week but did not receive the proper overtime wages to which they were entitled for all hours worked.

108.     Accordingly, Plaintiffs seek a judgment for unpaid minimum and overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiffs, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided by the FLSA.

## THIRD CLAIM FOR RELIEF
### (NYLL Unpaid Wages and Overtime Against All Defendants)

109.     Plaintiffs repeat and reallege each and every previous allegation as if fully set forth.

110.     Plaintiffs are persons covered by, and/or intended to benefit from, the provisions of the NYLL in respect to their work for Defendants.

111.     Pursuant to NYLL, Plaintiffs were entitled to certain regular and overtime wages, which Defendants intentionally and willfully failed to pay in violation of such laws.

112.     Plaintiffs regularly worked in excess of forty (40) hours per week for Defendants, but did not receive the proper wages and overtime wages they were entitled to for all hours worked.

113.     Accordingly, Plaintiffs seek a judgment for unpaid minimum, and regular wages, such sums to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiffs, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided under NYLL §§ 198 and 663.

## FOURTH CLAIM FOR RELIEF
### (NYLL Spread of Hours Against All Defendants)

114.     Plaintiffs repeat and reallege each and every previous allegation as if fully set forth.

115.     Pursuant to NYLL Articles 6 and 19, NYLL § 198, and the Wage Order issued under the

NYLL at 12 N.Y.C.R.R. §§ 146, Plaintiffs were to one additional hour of pay at the basic minimum hourly rate for each day on which the spread of hours worked by Plaintiffs exceeded ten (10)

116.     As a result of the foregoing, Plaintiffs have been damaged, and Defendants have profited thereby.

117.     Wherefore Plaintiffs seeks a judgment against the Defendants for all wages which should have been paid, but was not paid, pursuant to the NYLL and the Wage Order issued thereunder and the other provisions of NYLL; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiffs, along with an award of attorneys' fees, interest and costs as provided under NYLL §§ 198 and 663.

## FIFTH CLAIM FOR RELIEF
### (NYLL § 195.1 Wage Notice Violation Against All Defendants)

118.     Plaintiffs repeat and reallege each and every previous allegation as if fully set forth.

119.     NYLL § 195.1 mandates as of January 2011 that at various statutorily-delineated events each employee employed by Defendants receive for signature a Wage Notice, which has to contain the following wage information: (i) the basis of the employee's wage rates e.g., by the hour, shift, day, week, salary piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii) whether the employer will claim allowances such as tips, meals, and/or lodging against the minimum wage; (iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number.

120.     Plaintiffs have not ever received for signature the Wage Notice and never received any other paystubs or documents which might show the information required by NYLL § 195.1.

121.     Accordingly, Plaintiffs seek damages allowed by the statute as well as attorney fees, costs, and disbursements.

## SIXTH CLAIM FOR RELIEF
### (NYLL § 195.3 Wage Statement Violation Against All Defendants)

122.      Plaintiffs repeat and reallege each and every allegation previously set forth.

123.      Pursuant to NYLL § 195.3 employers must provide an accurate wage statement with each payment of wages. Wage statements must include, among other information "the dates of work covered by that payment of wages; name of employee; address and phone number of the employer; rate or rates of pay and basis thereof" and, where applicable, the overtime rate of pay.

124.      In violation of the NYLL, Defendants failed to furnish Plaintiffs with wage statements that show the employee's rate or rates of pay, the number of hours worked, or record proper pay for Plaintiffs' overtime hours.

125.      Accordingly, Plaintiffs seek damages allowed by the statute as well as attorney fees, costs and disbursements.

## SEVENTH CLAIM FOR RELIEF
### (NYLL § 191(1)(a) Violation Against All Defendants)

126.      Plaintiffs repeat and reallege each and every allegation previously set forth.

127.      Plaintiffs were manual workers as defined by the NYLL.

128.      Plaintiffs were entitled to be paid on a weekly basis and no later than seven (7) days after the workweek in which the wages were earned.

129.      Defendants willfully failed to pay Plaintiffs within seven (7) days after the end of each workweek in which wages were earned by Plaintiff, as required by NYLL § 191.

130.      Plaintiffs seek damages allowed by the statute.

## EIGHTH CLAIM FOR RELIEF
### (Unlawful Deductions under NYLL § 193 Against All Defendants)

131.      Plaintiffs repeat and reallege each and every allegation previously set forth.

132.      Under NYLL § 193, "[n]o employer shall make any deduction from the wages of an

employee, except deductions which . . . are expressly authorized in writing by the employee and are for

the benefit of the employee."

133.      Defendants repeatedly made unlawful and improper deductions from Plaintiffs' wages in

violation of Section 193.

134.      Plaintiffs did not agree in writing to any of these deductions.

135.      None of these deductions were made for the benefit of Plaintiffs.

136.      As a result of the foregoing, Plaintiffs have been damaged, and seek a judgment in an

amount to be determined at trial, together with attorneys' fees, interests, and costs, as provided under the

NYLL.

### NINTH CLAIM FOR RELIEF
**(Retaliatory Termination in Violation of the FLSA)**
***Plaintiff Camara Against All Defendants***

137.      Plaintiffs repeat and reallege each and every allegation previously set forth.

138.      On numerous occasions during his employment with Defendants, Plaintiff Camara

complained to Individual Defendants about Defendants' failure to pay for every hour worked and

overtime pay, and about their failure to pay in a timely manner.

139.      Just weeks after complaining to Individual Defendants, Plaintiff was terminated without

reason. Plaintiff was terminated in retaliation for his wage complaints.

140.      In terminating Plaintiff's employment, the Defendants have willfully and intentionally

penalized and retaliated against Plaintiff because Plaintiff made complaints about Defendants' wage

violations, in violation of the FLSA, 29 U.S.C. § 215 (a)(3).

141.      Plaintiffs seek on this claim for relief payment of lost compensation, damages and

reasonable attorneys' fees and costs.

## TENTH CLAIM FOR RELIEF
### (Retaliatory Termination in Violation of the NYLL
### *Plaintiff Camara Against All Defendants*

142.      Plaintiffs repeat and reallege each and every allegation previously set forth.

143.      On numerous occasions during his employment with Defendants, Plaintiff Camara complained to Individual Defendants about Defendants' failure to pay for every hour worked and overtime pay, and about their failure to pay in a timely manner.

144.      Just weeks after complaining to Individual Defendants, Plaintiff was terminated without reason. Plaintiff was terminated in retaliation for his wage complaints.

145.      In terminating Plaintiff's employment, the Defendants have willfully and intentionally penalized and retaliated against Plaintiff because Plaintiff made complaints about Defendants' wage violations, in violation of NYLL § 215.

146.      Plaintiffs seek on this claim for relief payment of lost compensation, damages and reasonable attorneys' fees and costs.

### [No More Text on This Page]

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all Defendants as follows:

a.  Compensatory damages;

b.  Liquidated damages;

c.  Back pay and front pay;

d.  Pre-judgment interest; and

f.  Plaintiffs' costs and reasonable attorneys' fees;

Together with such other and further relief as the Court deems just.

Dated: New York, New York
       November 2, 2020

ROBERT WISNIEWSKI P.C.

By: _____
       Robert Wisniewski
       *Attorneys for Plaintiffs*
       40 Wall Street, Suite 2833
       New York, NY 10005
       Tel.: (212) 267-2101

22