UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXANDRA ROSARIO, ELIZABETH
ORTIZ, and AMADOU CAMARA,

                   Plaintiffs,

     v.

2022 EASTCHESTER, LLC, FRANK
COTTO, NOBORU TAKASHIMA,

                   Defendants.

20-cv-09182 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs have moved to have this Court set aside the general release executed by plaintiff Amadou Camara and, pursuant to 28 U.S.C. § 1927, order Susan Egan to pay the fees and costs incurred by plaintiffs' counsel in making this motion. ECF No. 45.[1]

In November 2020, Camara and two fellow employees at Vaya, a Mexican take-out and delivery restaurant in the Bronx, sued the restaurant and its owners under the Fair Labor Standards Act ("FLSA") and the New York Labor Law. Plaintiffs' claims arose out of their employment at Vaya as cashiers and delivery drivers from August 2017 through March 2020. *See* ECF No. 5 ("Compl."), ¶¶29, 33.

After the summons and complaint were served but prior to defendants filing their answer, Egan drafted an agreement purporting to settle the action as to Camara. That document provided for, inter alia, the payment of $660 to Camara as well as a general release by Camara of any claims he might have had against defendants. Egan gave the document to defendant Cotto to in turn give to Camara for his signature, without notifying Camara's counsel. ECF No. 47-1. Both Cotto and Camara signed the settlement agreement on October 17, 2021, *see* ECF No. 47-3, all without Egan having notified Camara's counsel of what she was doing. The very broad release by its terms "includes, but is not limited to, all claims for additional compensation in any form that can be lawfully released, damages, reemployment or reinstatement including those under the Fair Labor Standards Act and the NY Labor Law." ECF No. 47-1, at 1.

---

[1] The Court has considered ECF Nos. 46, 47, 48, 53, 54, 55, 56, and their related attachments in deciding this motion.

## I.  CAMARA'S RELEASE IS VOID

Camara argues that the release contained within the settlement agreement is void for three reasons. First, it was obtained in violation of Rule 4.2(b) of the New York Rules of Professional Conduct (22 NYCRR 1200 et seq) because Egan had counseled Cotto concerning his communications with Camara, a represented adversary party, and had drafted the settlement agreement, which included the release, for Camara's signature, without notifying Camara's counsel. Second, it failed to comport with the "fair and reasonable" standard of *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). Third, it is procedurally unconscionable.

### A.  The Release Was Procured in Violation of Rule 4.2(b)

Camara alleges that Egan breached her duty under Rule 4.2 of the N.Y. Rules of Professional Conduct applicable to "communication with person represented by counsel," when she assisted her client—Cotto, an owner of the restaurant—in obtaining a signed release from an adversary—Camara, an employee at the restaurant—without notifying the adversary's counsel. Rule 4.2 reads as follows:

> (a) In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.
>
> (b) Notwithstanding the prohibitions of paragraph (a) . . .  a lawyer may cause a client to communicate with a represented person . . . and may counsel the client with respect to those communications, *provided the lawyer gives reasonable advance notice to the represented person's counsel that such communications will be taking place. . . .*

22 N.Y.C.R.R. § 1200, Rule 4.2(b) (emphasis added).

All parties agree that Egan drafted the settlement agreement for Camara to sign; that Egan knew Camara was represented by counsel; that her client—again, Cotto— gave the release to Camara without Egan providing any notice to Camara's counsel; that the release was signed by Camara without the advice of his counsel; and that Egan provided the fully executed settlement agreement to Camara's counsel only *after* its execution. Thus, Egan did not provide the requisite advance notice under Rule 4.2(b) to Camara's counsel that Camara would be receiving a draft settlement agreement and release from one of the defendants.

Consequently, the Court finds that Egan violated Rule 4.2(b). Although an attorney "may counsel the client with respect to those communications" with another

party represented by counsel, that may only occur "provided the lawyer gives reasonable advance notice to the represented person's counsel that such communications will be taking place." 22 N.Y.C.R.R. § 1200, Rule 4.2(b). Egan's claim that she did not know that her conduct violated Rule 4.2, *see* ECF 53-2 ("Egan Aff."), ¶9, is not a safe harbor. Ignorance of this professional ethics rule cannot be a defense against a violation of its prescripts.[2]

Egan's responses fail to carry the day. First, her suggestion that drafting the settlement agreement and release, which she knew her client would give to Camara, did not "cause" her client to communicate with Camara is fatuous. By drafting the document, she directly facilitated its communication to Camara. Second, it is similarly meritless for Egan to justify her conduct by pointing to the fact that Camara, not Cotto, allegedly instigated the settlement discussions. Rule 4.2(b) obliged Egan to notify counsel *prior* to the time her client presented Camara with the settlement agreement she had drafted.

However, plaintiffs have not pointed to any authority that a professional ethics violation requires the voiding of any agreement that resulted from the ethics violation. Because the Court finds the release void on other grounds, the Court need not determine whether a Rule 4.2(b) violation by itself requires that the release be voided.

## B. The Release and Settlement Agreement Do Not Meet the *Cheeks* Standard

Separate from any Rule 4.2(b) violation, plaintiffs allege that the settlement agreement falls short of the fair and reasonableness standard that district courts must consider when evaluating an FLSA settlement, and thus the release is void.

The U.S. Court of Appeals for the Second Circuit has held that "parties cannot enter into private settlements of FLSA claims without either the approval of the district court or the Department of Labor." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) ("We agree that absent such approval, parties cannot settle their FLSA claims through a private stipulated dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii)."). *See also Peguero v. Flair Redemption Mgmt. Corp.*, No. 19-CV-1068 (VSB), 2020 WL 8705750, at *1 (S.D.N.Y. Sept. 10, 2020).

---

[2] *See Metro. Life Ins. Co. v. Minnick*, No. 01-CV-6189 CJS, 2002 WL 1348415, at *2 (W.D.N.Y. Apr. 12, 2002) ("It is a violation of the Rules of Professional Responsibility to [k]nowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument. . . . Ignorance of the law is not a sufficient basis for denying plaintiff's application for attorney fees and costs, especially where the law is so well settled.") (internal quotations and citations omitted).

Before a district court can order the dismissal of an FLSA claim, it must consider whether the FLSA settlement is fair and reasonable. *Cheeks* listed several factors that courts have considered, including but not limited to: (i) whether the settlement agreement contains highly restrictive confidentiality provisions; (ii) whether the release is overly broad such that it would waive practically any possible claim against defendants; (iii) whether the settlement agreement includes a provision that sets high fee awards for plaintiffs' attorneys without adequate documentation; and (iv) whether the settlement agreement contains a pledge by the plaintiff's attorney not to represent any person bringing similar claims against defendants. *Cheeks*, 796 F.3d at 206.

As explained below, the Court concludes that the settlement is unfair and unreasonable under *Cheeks*, 796 F.3d 199.

### 1. *Unconscionably Low Recovery*

Courts throughout the Southern District routinely reject FLSA settlements where the parties fail to ground the settlement figure in estimates of the number of hours worked, applicable wage, or the nature of any factual dispute. In *Lopez v. Nights of Cabiria*, for instance, the district court rejected a proposed settlement because:

> The parties have not provide[d] the Court with each party's estimate of the number of hours worked or the applicable wage. The Court therefore has no sense of how the parties' counsel arrived at the opposing maximum recovery figures of $25,000 and $49,000, nor to what extent resolution of the various factual disputes cited in the parties' submission in either side's favor would alter those figures. The parties' submission lacks also any declarations, affidavits or exhibits substantiating its arguments. In the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable.

96 F. Supp. 3d 170, 176–77 (S.D.N.Y. 2015) (internal quotation marks and footnotes omitted). *See also Mamani v. Licetti*, No. 13-CV-7002 KMW JCF, 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014) ("The parties have failed to provide the Court with enough information about the bona fides of the dispute for the Court to determine whether the settlement amount is fair and reasonable.").

Plaintiffs allege that "Camara's optimistic, best-case scenario on all claims, inclusive of wage-related, statutory, and retaliation damages, liquidated damages and interest is $304,610.35." A settlement amount of $660.00 represents a mere 0.22% of what Camara refers to as his "best case scenario." Camara also alleges that he is owed $88,858.75 in unpaid wages alone. Opp. at 7. If true, the $660 paid to Camara to settle the litigation is only 0.74% of the alleged unpaid wages themselves.

4

Defendants have failed to respond to this point and similarly failed to ground the $660 figure in estimates of the number of hours worked, applicable wage, or the nature of any factual dispute. Accordingly, with the absence of any relevant information from defendants, the Court finds the settlement amount of $660 that Cotto paid Camara to resolve Camara's claims to be unreasonably low under *Cheeks*.

### 2. *Overly Broad Release*

The release Egan drafted is not limited to wage-and-hour claims, and covers essentially every conceivable dispute between Camara and defendants. Indeed, it not only covers any employment-related disputes between them but also covers "any other acts or events involving the defendants" as follows:

> In return for the payment of this sum and for other good and valuable consideration, I, for and on behalf of myself and my heirs, administrators, executors and assigns, effective the date thereof, do fully and forever, release and discharge defendants collectively and individually (the 'Releasees') from *any and all claims, obligations, or causes of action, known or unknown of whatever kind, relating to my employment with defendants or to the conclusion of my employment or any other acts or events involving the defendants* collectively and individually from the beginning of time to the date of this Agreement. This Release includes, but is not limited to, all claims for additional compensation in any form that can be lawfully released, damages, or reinstatement including those under the Fair Labor Standards Act and the NY labor Law. . . .

Release, at 2 (emphasis added).

Such a general release directly contravenes clearly established law that an FLSA release must be limited in scope. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). *See also Rubio v. BSDB Mgmt., Inc.*, 548 F. Supp. 3d 362, 369 (S.D.N.Y. 2021); and *Chang v. CK Tours, Inc.*, No. 18 CIV. 6174 (PAC), 2022 WL 1963663, at *7 (S.D.N.Y. June 6, 2022).

Accordingly, the release is so broad that it is unfair and unreasonable under *Cheeks*.

### C. The Release is Void for Procedural Unconscionability

Separate from any Rule 4.2(b) violation and separate from analysis under the *Cheeks* rubric, the Court also finds that the release is separately void on grounds of procedural unconscionability.

A contract is procedurally unconscionable if its formation was subject to an unfair process. In *Berkson v. Gogo LLC*, the district court observed that:

Whether procedural unconscionability exists is determined by what led to the formation of the contract. Procedural unconscionability involves questions about the manner in which the agreement was reached: Did one party adequately explain the content of the agreement to the other? Was the explanation in a language readily understood by the other party? Were there sharp practices or overreaching? Did one party take advantage of the other's lack of experience or naïveté?

97 F. Supp. 3d 359, 391 (E.D.N.Y. 2015) (internal citations omitted).

This release was procured through a procedurally unconscionable process. In Egan's October 19, 2021 email to Camara's counsel, which belatedly notified him that she had procured a release of Camara's claims in this litigation, she noted that "Over the weekend, your client Mr. Camara, was in touch with Mr. Cotto. He asked for a letter explaining that he had lost his job with Eastchester because of the pandemic. The letter was provided. Mr. Camara also expressed an interest in settling his lawsuit against Eastchester LLC. I attach a copy of the release that he signed on Sunday." Egan Oct. 19, 2021 Email. In his declaration in support of this motion, Camara states that:

At the time I contacted Mr. Cotto, my car that I use at work for delivery was in a repair shop. I was so focused on obtaining some funds immediately that I did not even think to contact my attorney Robert Wisniewski to see, if there were any alternative way to prove my employment. I thought that only Mr. Cotto could provide information . . . Mr. Cotto responded by text almost immediately and then called me. I told him that I needed a letter from the former employer and was willing to drop the lawsuit for the letter. Mr. Cotto told me that he would give me the letter and pay me what he said he owed me, that is \$660 which was the last weekly pay, and I would have to drop the suit. Otherwise, there was no deal. I agreed.

ECF No. 56 ("Camara Decl."), ¶¶7-8.

The Court concludes that (i) Egan and Cotto knew about Camara's financial distress at having lost his job[3]; (ii) Egan assisted her client by drafting a release and settlement agreement for her client to give to Camara without notifying Camara's counsel that her client intended to give the release to Camara to execute; and (iii) Cotto, who had been advised by counsel on settlement negotiations, took advantage of Camara by obtaining Camara's signature on the release without first ensuring that

---

[3] *See* Egan Oct. 19, 2022 Email; and Egan Aff. ¶3 ("Mr. Cotto also told me that [Camara] had asked for a letter explaining why his compensation had decreased in order to apply for benefits from New York's Excluded Workers Fund. Mr. Cotto prepared such a letter and sent it to me for review. I told him the letter was fine.").

Camara had been advised by his own lawyers on the advisability of signing the document Cotto gave him.

## II. REQUEST FOR FEES AND COSTS

Plaintiffs request that the Court direct that Egan pay the attorney fees and costs expended due to this motion. A decision to impose fees and costs personally on counsel must be made "with restraint and discretion." *Salovaara v. Eckert*, 222 F.3d 19, 27 (2d Cir. 2000).

The Court has statutory authorization under 28 U.S.C. § 1927 to impose liability for excess costs on counsel. Under that statute, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

As the Second Circuit has explained, "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). Specifically, the Second Circuit requires that "an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power." *Oliveri*, 803 F.2d at 1273.[4] As more recently set forth, "an award under § 1927 is proper only 'when there is a finding of conduct constituting or akin to bad faith.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016) (quoting *State St. Bank v. Inversiones Errazuriz*, 374 F.3d 158, 180 (2d Cir. 2004)).[5]

---

[4] In the Second Circuit, "inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (citing *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). "Conduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Scivantage*, 564 F.3d at 114 (citing *Scivantage*, 194 F.3d at 337). Additionally, the Second Circuit notes that "[a] finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." *Scivantage*, 564 F.3d at 114 (citing *Schlaifer*, 194 F.3d at 337). Last, "[c]lear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020).

[5] The Second Circuit has held that "bad faith may be inferred where the action is completely without merit." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000). For instance, courts may reasonably find that a lawyer engaged in bad faith when the attorney maintains a suit that lacks a factual basis, *see Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 284 (2d Cir. 2021), or when an attorney files a

The Second Circuit has clarified, however, that "poor legal judgment" is not enough to impute bad faith. *See Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 340 (2d Cir. 1999); and *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000).

## A. Findings of Fact

In making its findings, the Court views the facts in the light most favorable to Egan, is cognizant that an imposition of fees or costs must be "supported by a high degree of specificity in the factual findings," *Scivantage*, 564 F.3d at 114, and is mindful of the requirement that "[c]lear and convincing evidence of bad faith is a prerequisite to an award of sanctions," *Feldman*, 977 F.3d at 235.

Even under this high standard, the Court finds by clear and convincing evidence that Egan's conduct in these instances has (i) multiplied "the proceedings . . . unreasonably and vexatiously," 28 U.S.C. § 1927,  (ii) has been "entirely without color," *Scivantage*, 564 F.3d at 114, and (iii) has been "motivated by improper purposes," *Schlaifer*, 194 F.3d at 340. Three separate actions by Egan support this finding.

### 1.  First Action: Failing to Notify Opposing Counsel that She Was Providing a Draft Settlement and Release to her Client for Camara to Sign

Egan's failure to provide advance notice to opposing counsel prior to Camara signing the settlement and release that she had drafted that document and that it would release all of Camara's claims against her client, has served to unreasonably and vexatiously multiply the proceedings and waste court resources. That decision was "entirely without color" and "motivated by an improper purpose."

Absent Egan's drafting the settlement release and providing it to her client with the knowledge that her client would ask Camara to sign it, the release almost certainly would not have been signed. In other words, but for Egan's conduct, there would not have been an unreasonable multiplication of proceedings.

In addition, the Court finds by clear and convincing evidence that the following factors, when viewed in tandem, provide a sufficient basis for concluding that Egan acted in "bad faith" in her failure to notify opposing counsel.

First, the Court finds that Egan intentionally declined to notify Camara's counsel that she had drafted the release that she knew her client would be presenting to Camara. Egan nowhere contends that the exclusion of Camara's counsel was a mere

---

meritless motion, *see Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) ("It is sometimes possible to infer bad faith from the meritlessness of a motion.") (citing *Schlaifer Nance*, 194 F.3d at 338.)

oversight.[6] Were Egan to aver that she made a good-faith mistake in forgetting to notify Camara's counsel that her client was negotiating a settlement of this litigation with Camara, she could allege that her failure to notify opposing counsel was perhaps merely negligent and not willful. Yet as set forth above, Egan deliberately facilitated a settlement between her client and Camara, explaining that both her client and Camara had "an absolute right to settle a case without the consent of [their] attorney[s]." ECF No. 53 ("Opp'n"), at 1.

Moreover, rather than concede an honest mistake or admit an error in judgment, the defendants' memorandum and Egan's affidavit omit *any* acknowledgement that Egan had an ethical duty to alert Camara's counsel to the fact that her client would be imminently presenting Camara with the release she drafted. In fact, defendants' opposition and Egan's affidavit make no mention of the Rule 4.2(b) requirements for advance notice, and instead seek to obfuscate the issues by referencing the seeking of privileged or confidential information. Thus, even after plaintiffs' motion, Egan has not acknowledged the fact that she violated her Rule 4.2(b) obligations.

### 2. *Second Action: Writing Release Language that Could Not Plausibly Dispose of FLSA Dispute in a Lawful Manner*

The Court finds that Egan's conduct in providing an overbroad release to her client for Camara's signature has served to multiply the proceedings and waste court resources. Such conduct has been "entirely without color" and "motivated by an improper purpose."

As explained above, the release does not satisfy the fairness and reasonableness requirements of *Cheeks*. The unconscionably low recovery of $660 (absent any submission by defendants of the range of possible recovery) and the overly broad release each provides evidence that (i) the release would fail to pass muster under *Cheeks* on fairness and reasonableness grounds, and (ii) that Egan, an experienced employment lawyer, should have known that the release by itself would fail under a *Cheeks* analysis.

The Court finds bad faith on two accounts. First, Egan knew at the time she drafted the release that it could not legally dispose of the Fair Labor Standards Act case. Egan affirms as much when stating that she "felt comfortable with this judgment at least in part because [she] knew the release could not waive the Fair Labor Standards

---

[6] Egan does not dispute that she knew, at the time she sent the settlement agreement to Cotto in October 2021 to share with Camara, that Camara was represented by counsel. Wisniewski filed the initial complaint in November 2020 (ECF No. 1) on behalf of all plaintiffs and Egan had communicated with him regarding this litigation over the months that followed. *See, e.g.*, ECF No. 35 (setting forth numerous contacts between Egan and Wisniewski commencing in June 2021).

Act claims." Egan Aff. ¶9. In addition, Egan has served as defense counsel in at least one other FLSA action subsequent to *Cheeks* in the Southern District and cannot say that she is ignorant of the FLSA requirements in the Second Circuit. *See Chambers v. Cone Heads Ltd. et al*, No. 18-cv-07823 (OTW), (S.D.N.Y. June 23, 2020), ECF No. 56. Thus, the Court finds her inclusion of the FLSA release language (and subsequent conduct seeking dismissal of Camara's claims in this litigation) to have been frivolous.

*Schlaifer Nance & Co. v. Estate of Warhol* provides no succor for Egan. In that case, the Second Circuit reversed a district court's award of fees under section 1927 on the basis that even though an attorney's conduct was "objectively frivolous," there was "no evidence to suggest that they had utterly no basis for their subjective belief in the merits of their case." 194 F.3d 323, 340 (2d Cir. 1999). Here, the evidence that Egan had no basis for a subjective belief in the validity of the release includes the fact that Egan is an experienced employment litigator in New York, *see* Susan B. Egan, https://eganlawfirm.com/about/susan-b-egan/, has handled other FLSA disputes, and has represented that she knew the release was ineffective as to FLSA claims. *See* Egan Aff. ¶9.

Second, the Court finds bad faith in Egan's contradictory representations to opposing counsel and the Court. In Egan's October 19, 2021 email to Wisniewski, she states that the release fully disposes of Camara's claims against defendants and that Camara must accordingly be dismissed from this litigation. Egan Oct. 19, 2021 Email. One month later, Egan reiterates this position in another email to Wisniewski. ECF No. 55-2 ("Egan Nov. 20, 2021 Email"). Yet in Egan's affirmation submitted the next month to this Court she states: "I knew the release could not waive the Fair Labor Standards Act claims." Egan Aff. ¶9. In sum, Egan's position both that the release (i) surrendered Camara's FLSA claims in this litigation and (ii) that it did not do so are contradictory and in bad faith.

### 3. *Third Action: Demanding that Camara's Counsel File Frivolous Amendment to Complaint*

The Court also finds that Egan's October 19 email to Wisniewski provides a basis to impose liability for excess costs under section 1927. Egan's directive—that either Wisniewski engage in wrongful conduct that would violate his duty to his client or else Egan would move for dismissal of Camara from this litigation on the basis of the release—combined with Egan's related representations were "entirely without color" and "motivated by an improper purpose."

In Egan's October 19, 2021 email to Wisniewski, she attached a copy of the signed release and settlement agreement, asked Wisniewski to "file a second amended complaint which eliminates [Camara's] claim," and stated that if he were "unwilling to agree to such an amendment, [Egan] will use the release to move to dismiss so much of

the Amended Complaint as relates to Mr. Camara." Egan Oct. 19, 2021 Email. Either one of these filings would have been frivolous because, as Egan now appears to concede, "the release does not in fact release Camara's claims under the Fair Labor Standards Act." Opp'n 4.

After considering Egan's conduct on October 19, 2021 and her conduct in filing defendants' memorandum and her affidavit, the Court finds that Egan's conduct was in bad faith. First, nowhere does Egan reconcile her October 19 email to Wisniewski with any acknowledgement that Wisniewski would be acting improperly if he had withdrawn Camara from the present action based on the release and without a *Cheeks* approval by the Court.[7] *See Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 284 (2d Cir. 2021). Egan knew she had no factual basis upon which to make that demand of Wisniewski.

Second, Egan's characterization of her communication to Wisniewski is disingenuous. In Egan's affidavit, she claims: "It was my judgment at the time that, so long as Wisniewki had a chance to review the release with his client and I did nothing with the release until Wisniewski and his client had decided whether Camara was going to stand behind it or not, no violation of Rule 4.2 would occur." Egan Aff. ¶9. Yet as explained above, Egan's email to Wisniewki provides that if Wisniewski did not remove Camara from the action, then Egan would have moved to dismiss Camara from the action, which would have required Wisniewski to oppose the frivolous motion. Thus, it is evident that Egan intended to employ the release if Wisniewki did not accede to her request to drop Camara from the action.

## B.  Award of Fees and Costs Is Appropriate under 28 U.S.C. § 1927

Based on Egan's conduct in drafting and facilitating the execution of the settlement and release and the subsequent actions described above, the Court finds by clear and convincing evidence that under 28 U.S.C. § 1927 and controlling Second Circuit law, Egan:

> (i)   is an "attorney . . . admitted to conduct a case" before this Court, 28 U.S.C. § 1927;
>
> (ii)  has "so multiplie[d] the proceedings in [this] case unreasonably and vexatiously," *Id.*; and
>
> (iii) engaged in conduct that was "entirely without color," *Scivantage*, 564 F.3d at 114, was "motivated by an improper purpose, *Id.*, and was in "bad faith," *Schlaifer*, 194 F.3d at 340.

---

[7] Egan's emails to Wisniewski—Egan Oct. 19, 2021 Email and Egan Nov. 20, 2021 Email—never contemplated that either Egan or Wisniewski submit the release to the Court for a *Cheeks* review. *See* Egan Aff. ¶23 ("While the release may be overbroad for the settlement of an FLSA claim, the release is not being submitted to the Court at this time as part of a Cheeks application.").

Accordingly, the Court grants plaintiffs' request for the fees and costs associated with litigating this motion.

## III. CONCLUSION

For the reasons set forth above, the Court grants plaintiffs' motion, ECF No. 45, insofar as it seeks to void the release and order Egan to "personally satisfy the excess costs, expenses, and attorneys' fees" associated with litigating this issue. 28 U.S.C. § 1927. Plaintiffs shall submit a tabulation of the fees and costs incurred in making this motion within seven days. Defendants may respond within seven days thereafter. There will be a pretrial conference on this matter on November 7, 2022 in Courtroom 23A at 4:30 p.m. to establish a schedule for the remainder of this litigation.

Dated: New York, New York
       October 13, 2022

SO ORDERED:

Sidney H. Stein, U.S.D.J.