

Egan Law Firm, LLC
805 Third Avenue, New York NY 10022
Tel 212.619.8456   EFax 646.417.7977

Susan B. Egan
Segan@eganlawfirm.com

October 28, 2022

Hon. Sidney H. Stein
United States District Judge
US Courthouse
500 Pearl Street
New York, NY 10007

   Rosario et al v 2022 Eastchester LLC
   20 cv 9182(SHS)

Dear Judge Stein,

  I was deeply saddened to read this Court's decision on October 13. Clearly, I offended the Court and I am very sorry for doing so. It was certainly not my intention to offend the Court or my opponent but simply to deal with the situation with which I was presented: a plaintiff who refused to consult his lawyer and wanted to settle. I have been in practice 47 years in New York and until now, have never been sanctioned, charged with violating the New York Rules of Professional Conduct or engaged in any conduct in a litigation which a court has deemed to evidence bad faith. I am embarrassed that on the eve of my retirement from the practice, you have found my conduct worthy of this kind of attention.

  In retrospect, I very much regret proceeding in the fashion I did. But I did not proceed believing that my conduct would violate Rule 4.2 of the NY Rules of Professional Conduct or with the intention of securing some advantage in the litigation.

  The theory upon which I based my belief the 4.2 would not be violated by my preparation of the release was that I had not "caused" Mr. Cotto to contact my Mr. Camera and that Comment 11 to Rule 4.2 permitted me to provide the release to my client. I would not have provided the release if I didn't think there was a colorable basis for doing so.

  I know that the Court disagrees with me and thinks that my argument that I did not "cause" Cotto to contact Camera is fatuous. I thought that Rule 4.2 prohibited me from talking to a represented party and appointing anyone else to talk to a represented party about the subject of a litigation without the consent of his lawyer. I did not understand Rule 4.2 to

prohibit me from talking to a represented party if he presented himself to me, so long as I didn't "invite the represented person to take actions without the advice of counsel." Rule 4.2 Comment 11.

It was neither my expectation or my intention that the release would finally settle the case. I told my clients that the release would be useless until Camera discussed it with Wisniewski. I told my clients that either Mr. Camera would disavow the release or he wouldn't and that we would proceed in the litigation in whatever way Mr. Wisniewski's and Mr. Camera's decision with respect to the release required. I had no plan to enforce the release if Mr. Camera disavowed it by motion to dismiss or otherwise. My intention was to put Mr. Wisniewski and Mr. Camera in the same position they would have been in had Mr. Camera not declined to contact his lawyer about the release.

I certainly knew that the release did not settle the FLSA claim. There had been no discovery on the wage and hour issue at all. When I sent the release to the Court, I did not contend that the release settled the case or the amount paid to Mr. Camera satisfied *Cheeks*. Rather I asked the Court for an extension of the deadline to provide an answer to the amended complaint to accommodate whatever Mr. Camera and Mr. Wisniewski decided to do with the release after they had had a chance to discuss it. I said,

> I provided the release to Mr. Wisniewski yesterday and requested an extension of our time to move or answer to accommodate this new development. He would need time to consider whether to amend his complaint to remove the allegations by Mr. Camera and/or I would need more time to respond to whatever Mr. Wisniewski elected to do. I called Mr. Wisniewski this morning but he has not gotten back to me. ECF 39

The Court granted this motion on October 21, 2021. ECF 40.

The Court faults me for failing to respond to the portion of plaintiffs motion that addresses *Cheeks*. I didn't do so because I knew the settlement and release did not satisfy *Cheeks*. I did, however, submit some information about what Vaya's records indicated. Vayas records showed that plaintiffs had worked many fewer hours than Mr. Wisniewski's damage analysis contended they had and that they were paid by defendants for each of these hours. As a result, I thought plaintiffs' damage claim was significantly overstated. See Egan Affirmation ¶ 12-14. ECF 53.

It is true that I told Mr. Wisniewski that I would make a motion to dismiss the Camera allegations if he didn't take them out of the amended complaint. But Mr. Wisniewski knew as well as I did that the release did not give me any basis for moving to dismiss. The assertion was more in the nature of lawyer hyperbole, like Mr. Wisniewski's threat in our first telephone conversation to report my clients to the IRS for underreporting their income. Certainly if I had

Hon. Sidney Stein
October 28, 2022
3 | Page

made such a motion the Court could properly sanction me for making a motion which I knew had no merit. However, I did not make such a motion and had no plan to.

I took the steps with which the Court finds fault because I believed Camera wanted to settle the suit and that he had approached my client about doing so. As Mr. Cotto outlines in his affidavit, I told him and told him to tell Mr. Camera that we could not settle without the participation of Mr. Camera's lawyer; that without Mr. Wisniewski, the release would not "hold water". Cotto Aff. ¶ 6 ECF 53-1  I was then told that Mr. Camera did not want to consult his lawyer. He told Mr. Cotto

> ... that he didn't like his lawyer, that he didn't want to talk to him; that he had only met him once; that he was only available to meet on Fridays since he was not in his office any other day; and that he only got involved in the litigation because the girls had pressed him to join. He said he would talk to his lawyer the following Friday. Cotto Aff. ¶ 6 ECF 53-1

When Camera continued to decline consult his lawyer, I was careful to include in the release a provision which advised him that he was surrendering significant rights which he should discuss with his lawyer. I then provided the release to Mr. Wisniewski to make sure that such discussions took place.

I appreciate that Mr. Cotto's description of his conversation with Mr. Camera differs markedly from Mr. Camera's description. Under the circumstances, such differences are hardly surprising. At the time, I had no reason not to believe my client. The texts from Mr. Camera seemed to me to corroborate that Mr. Camera had approached him about settlement, not the other way around. Cotto Aff. ¶ 2 ECF 53-1

Further evidence that Camera was not interested in suing Vaya and its owners was provided after the release had been signed and the documentation he requested provided to him. Camera reported to my client that he had contacted his lawyer, a contact which might not have occurred but for our insistence, and that his lawyer had screamed at him and behaved like a crazy person. He told Cotto he wanted nothing further to do with him. Cotto Aff. ¶ 13. ECF 53-1.

Camera also said that he would testify in plaintiffs' state suit that he had not seen them being sexually harassed.

After the service of plaintiffs' papers in connection with this motion, Mr. Cotto assured me that at no time had he made the provision of the documentation Camera needed respecting his employment, contingent upon Mr. Camera signing the release.

I know that the Court disagrees with my analysis of the Rules of Professional Conduct. My conduct may have been foolish but none of it was done with the intention to gain some

advantage over our opponents and none was obtained. The only additional work that my conduct imposed on the Court or my opponent was this motion.

I would very appreciate the Court permitting me to make a motion to reconsider.

If the Court is unwilling to permit me to make such a motion, please consider the following as a sanction in lieu of attorneys fees: an order precluding us from soliciting or offering any evidence relating to Mr. Camera's signing of the release. Such an order would prevent us from obtaining any advantage from Mr. Camera's apparent interest in dropping his suit against defendants.

The attorneys fees being sought are very burdensome, particularly at this point in my practice. I have closed my office in Manhattan and am working from home. If the Court were to award the full amount requested, I would need Mr. Wisniewski to accept payment over time. As I have repeatedly told Mr. Wisniewski, my clients have been without funds and as a result I have not been paid for much of my work. Once I realized that defendants had good records of the hours his clients had worked and the amount they had paid, I tried to encourage Mr. Wisniewski to sit down with our respective records, figure out what plaintiffs are owed and try to bring the litigation to conclusion. Egan Aff. ¶ 17. ECF 53-2. But he was apparently not interested in doing so.

Thank you for your consideration of this letter and of my request that the Court reconsider its decision.

Sincerely,

Susan S Egan

cc: Frank Cotto
Noburo Takashima